This morning, which is Horist v. Sudler & Company. Mr. Fish. Good morning. Just give us a minute until the room clears. All right, you may proceed whenever you're ready. May it please the Court, Counsel. Good morning, my name is David Fish and I represent the Plaintiff Appellants in this matter. We brought this case to challenge the hundreds of dollars that our clients were forced to pay to obtain the disclosure documents that they needed to meet a condition of their closing. Where I'd like to start out is the ruling that came down a couple weeks ago in the Friedman v. Lieberman case. Can you rely on that case since it's an unpublished case and Illinois Supreme Court Rule 23 says you can't rely on unpublished cases? I don't think it has any precedential value in terms of this Court being required to follow it. Besides, there wasn't even an opinion of the Court. It was a two-to-one decision, and two of the justices didn't even answer the question. Rule 23 in the state court, I don't think, prevents the federal court from looking at it. And all that we're asking the Court here to do is look at Justice Walker's reasoning in that case because he talked about our case. I mean, he specifically addressed our opinion, and the word that he used for it was, quote-unquote, implausible. He called the decision in the district court in this case implausible, and he addressed it. And so the very issue that was at issue in that case was, can a condo seller sue a management company acting as an agent for the condo board for charging allegedly excessive fees? And so what I'm asking this Court to do is look closely at his reasoning. I mean, he went on for nearly 10 pages about why, if this practice is allowed to continue, it makes a condo act futile, essentially. Mr. Fish, you argued that the documents at issue here can only be produced by the agents of the condo associations. Why can't you get these documents directly from the condo associations themselves? Sure. The association is a – it sounds like a big organization. It's not. They basically have nobody – But can you get the documents from them regardless of their size? No. In fact, if you look at the amicus brief that you're allowed to be filed in here, the institute, in the very opening paragraph, they make the point that the custodian of the documents is the management companies. Did your clients ever try to go directly to the condo associations to get the documents? Our view is when they went to the agent, that is going directly because the association made it so that was the only way to get it. So they didn't try to go – they went to the agent only is your position? Correct, because there's no – it's not like there's an office of the association. If you go to the association, somebody from Suttler is sitting in there. So there's no human being that works for the association where it's like – like at the clerk's office. If I want to get documents, I can go down to the 20th floor and I can look at the documents for free by asking the clerk. Or I can go and look at them on Pacer for nine cents a page from the comfort of my office. The analogy would be if I went down to the clerk's office and somebody from Pacer was standing behind there and saying, hey, go log on and you can pay for that. The association is made up of volunteers who – these are homeowners who have a board, who volunteer an hour or so a month to hold a meeting, and everything is done by the management company. It's the only game in town in terms of where you can get your documents. There just is not – it's not like there's door number one with the association and door number two with the management company and everybody chooses to go through door number two. There's only one door. And if you open that door, it's – Let me ask you kind of a related question. It's a – you know, it's not directly on point. We're on a 12B6 here and you pled what you pled and all that. But in keeping with the question that Judge St. Eve is asking, why couldn't you say, look, I understand that reality entirely. But the HOA or the condo association, they do have a – they have a president or they have a board. You say, I'm just simply refusing to go to the Suttlers and the – what is it – HomeWise of the world. You, the board, are under the obligation and you, the board, have the obligation to provide these at a reasonable cost. And so notwithstanding that you're pointing me in another direction, you say you don't have them, that doesn't suffice. Yes. So the problem – So couldn't you bring that lawsuit where your lawsuit is just basically there's been a refusal by the association to produce documents? We could bring such a lawsuit, sure. And – but the problem is there's closing deadlines. Like you have a very short period of time to get these documents. So that's your argument. It's basically oppressive that you really don't – a seller is caught in a spot where they don't have any choice. Exactly. And I think that this court's opinions have recognized that it doesn't have to be your only source, right? If there's – as you said, if it's oppressive, if it makes it difficult, those are the types of things – you don't have to file a lawsuit, default on your closing obligation, sue somebody, wait a year or two for a court to rule on it, and then you're stuck with no choice. The reality, these are selling people who, at this point, they really don't care about anything but selling their homes and they learn about this as a prospect of their closing. In fact, the Ramirez v. Smart case that we rely on, it kind of makes that point in terms of you don't have to go through a futile act in terms of, in that case, it would have been suing the hospital. Well, the question is not whether a suit would be a futile act, but whether you've pleaded appropriate factual content that would allow an inference to be drawn that, if you went to the source of these documents, which is the Homeowners Association, that's the managing board of the Homeowners Association is the one with the statutory duty to supply the disclosure documents and to do so at a reasonable fee. You haven't alleged that, had you done so, you would have been turned down. Yes. So I believe that what the statute says – I think we have, and the reason that I believe that is we do allege that the defendants force us to go and get the documents from them, and if you look at the statutory scheme here, it says that the association can appoint a managing officer to handle these document requests, and our entire theory here is that the defendants are that appointed body. So I don't think that there's any obligation – and first of all, furthermore, I think that's a defense. I don't think we have to plead around their defenses as to what – you could have gone to the association. I don't think there's any obligation that we specifically plead it. I don't think Ramirez required it, and I think we're dealing with notice pleading at this point, so I don't think that we're required to specifically allege that, but our entire theory of this case is that the defendants are the only game in town in terms of where we can get these documents. It would be – and look, if we get into discovery and all sorts of people were getting these documents from the association, I'm quite certain that – and it turns out that our clients decided to go through door number two when they could have got them for nothing through door number one, then obviously that's a whole different ball of wax. But our entire theory is that these defendants have set things up. They are acting – they are stepping in the shoes of the association. There is no human being there that is from the association where you can get the documents. Why isn't your statutory claim, then, against the association, that it's violated the statute by outsourcing this responsibility? We could have made a claim against the association. Right, but that's – so you have – in order to plead yourself into the regulatory sphere here, you have to bring a claim against the association, which is the body with the regulatory duty. The third-party vendor doesn't have a regulatory duty. I respectfully disagree, Judge. I believe that what the Illinois Supreme Court said in the Cowper v. Nyberg case that we rely on is – and I'm going to put aside for a minute the implied right of action claim. The court said you look at the elements of the cause of action, and you put aside the implied right of action. In that case, it was a claim against the clerk's office that claimed, hey, we don't have a statutory duty to lift a body attachment. Somebody apparently – I think they got arrested, and they were sued for that. And they said there's no statutory duty. And the Supreme Court said you don't go under an implied right of action. Even if there is no statutory duty, you look at the elements of the cause of actions. So if you look at the elements of the cause of action that we have, all of our claims stand against the agent. So take, for instance, the consumer fraud claim. The Consumer Fraud Act specifically defines a person who's liable as, quote, unquote, an agent. And, in fact, it even says an agent of an association. So we cite that in the Elder v. Coronat case. In that case, an insurance company came up with the idea, let's deny claims unless somebody takes a polygraph test, a lie detector test. And they hired an agent to carry out the polygraph test. And the Consumer Fraud Act was brought against the insurance company and the agent. And the agent said, hey, we're just the agent. We're not doing this for ourselves. And the Illinois Appellate Court said look at the definition of who's liable under the Consumer Fraud Act. It includes the agent. And so an agent can be liable directly under the Consumer Fraud Act. And also to go back to your Honor's question, why didn't we sue the association? Look, these are not-for-profits who aren't getting any of this money. We went after the people who are in business taking our clients' money. We think if you look at who the real bad people are here, the ones that are taking the money, the association's not getting this money kicked back to it directly. That's where the disconnect lies, though, right? I mean, your papers are really clear on that point. You know, your clients, you feel like they're being fleeced, right? That they're just paying an exorbitant fee there. But the statute by its terms only imposes the duty upon the association, right? That's where it gets disconnected. So it seems like the way out of the holdup problem for you is to say, look, I could care less what Suttler or HomeWise or any of these other organizations are doing. I'm suing you, the association, because you bear the obligation. And I'm not going to pay $350 for it. And then we default on our closing deal. Or you go to the condo association that has the obligation to turn it over. It practically could not. I mean, you would have a – there's a couple of reasons. Number one, they don't have – they're not getting the money. Number two, Illinois law, the Ramirez case, specifically allowed a consumer fraud claim against an agent of a hospital in that case. It was the same regulatory issue. I think that case is really on all fours with this. The Consumer Fraud Act allows you to sue an agent. It's right in the definitions. We're talking about the Condo Act claim because without a violation of the Condo Act, you don't have a consumer fraud claim. I disagree, Your Honor. Well, let's focus on the first. How is this a violation of the Condo Act when the regulatory obligations are imposed on the association? And your clients could have gone to the association for the documents, and the association would be bound by the 30-day rule to produce them. And if there was a violation, then you've got a claim. But the act itself specifically forecloses a cause of action against a management company that is hired by the association. First of all, respectfully, Your Honor, it doesn't specifically foreclose. Isn't that the import of 18.7 sub G1? No, Your Honor. Nothing in this act shall create a cause of action by a unit owner against the community association manager or the firm of the community association manager, in other words, the management company? I think that's a section not dealing with the provision with respect to providing of the documents. We're dealing under 22.1. And what Justice Walker said, and I think it makes sense, is if you need to imply a cause of action to effectuate the purpose of the act, then that's where you allow for an implied right of action. I also want to address Your Honor's comment. In the Ramirez case, they said there is no implied right of action under the Hospital Records Act, and they still allow the plaintiff to go forward with the Consumer Fraud Act. These claims are completely independent of each other. And I think in the district court, the district court said we don't have an implied right of action, so we essentially lose on everything. That's not what the law says, again. In Ramirez, plaintiff lost. There was no implied right of action under the Hospital Records Act, and they still allowed the claim to go forward under the Consumer Fraud Act. These claims are not intertwined. We plead it in the alternative. I'm sorry. Go right ahead. The way you've pled the Consumer Fraud Act, the unfair practice at issue is the violation of the Condo Act. The charges, the excessive charges. Correct. That's the way you've pledged your Consumer Fraud Act case. You have tied it to the underlying unfair business practice being violation of the Condo Act, the charging of this fee in excess of what the Condo Act provides for the documents. Sure. There's no doubt they're related. So given the way you've pled it, if that underlying act of a property management company charging that fee is not a violation of the Condo Act, what's your hook for that being an unfair business practice? The Consumer Fraud Act. Because the Consumer Fraud Act said, and going back to the lie detector case, the court relied on the fact that, hey, there's no statutory in that case. There's no statutory thing that prevents an insurance company from doing this, but there's all sorts of statutory provisions that limit the use of a lie detector test in general. So we're going to look at the fairness from that. So I don't get kicked out of the box on a claim just because the Condo Act doesn't specifically address every single possible person who could be involved in this. The Consumer Fraud Act says, hey, I can look at standards that Justice Walker said. Again, that may be what the Fraud Act says, but the way you have pled this, you have defined or alleged that the unfair practice is essentially what violates the Consumer Fraud Act. So if there's no violation of the Consumer Fraud Act, then what's the unfair business practice? You mean if there's no violation of the Condo Act? Correct. Yes, I'm sorry. So in other words, Your Honor, let's just say the court rules no implied right of action. Management companies aren't mentioned in the Condo Act, so I lose under the Condo Act, right? So if that were the court's ruling, then what Illinois case law, the Ramirez case, the Coronat case, the other cases allow the hook to go in and say, okay, even though not expressly prohibited by a state statute, when there is a policy that is addressed, even if not expressly, like insurance companies aren't necessarily prohibited from doing polygraph tests, that's a policy that we can look at. And like Justice Walker said, the policy in the Condo Act is don't charge people a lot for these documents. And I would say I'm entitled to go against somebody who's not expressly covered under that act. And that's what happened in Ramirez. That's what happened in Coronat. Ramirez, I want to ask you about that. I may have misread Ramirez, and you can correct me if I did. But I thought Ramirez, the defendant there, what was it, a hospital company? It was a copying company that the hospital had. Right. I thought the reason that that claim was allowed to go forward was because that there was billing fraud or there was a concern about fraud with respect to the invoices or overcharges on the invoices that that company had sent out. But here, you're not alleging that HomeWise or Sudler, you know, have deceived anyone with respect to the amounts being charged or anything like that. So that was, you're correct, that was part of the Ramirez case. But the Ramirez case also allowed a claim to go forward for excessive charges. In fact, that case certified a class for excessive charges. On the basis of fraud, though, right? The deception was that you were holding these out as, like, actual medical-related costs that were incurred at the hospital when, in fact, they weren't. That was certainly part of it, but I don't think that the decision in that case was limited to it. And it cited, it relied on the Tennessee case that we relied on. The Illinois Appellate Court there cited that case, and that case made the point that, you know, you can't allow an agent to do something that the principal is prohibited from doing. And so they all, you know, brought it in through there. I see I have just a small time left. Can I save that for my rebuttal? That's fine. Mr. McColgan. May it please the court. Arthur McColgan for Defendant FLE Suttler and Company. I have four points to make in support of affirmance of the district court's dismissal. First, controlling rules of statutory construction confirm that Section 22.1, as written, does not regulate property management companies like Suttler or vendors like HomeWise. Second, the reasonable fee provision in 22.1C does not include a private right of action expressed or implied. Third, established principles of agency law hold that the agent is not liable for violation of a duty owed by the principal. Moreover, Illinois has rejected the active part agency liability theory. And fourth, plaintiff statutory or common law claims are all reliant on the alleged condo breach, which plaintiffs cannot establish. Moving to the first issue, as the court has noted, the statute itself, 22.1, never mentions management companies or vendors. The association has the obligation to provide the documents. The association is the only one mentioned in the reasonable fee provision. If plaintiffs had gone to the association directly, could they have gotten the documents from them here? I assume they could, Your Honor. But they didn't do that, as far as I'm aware. It's not alleged in the complaint. And one other thing to note in section 22.1B is that the association has 30 days to provide the documents. And that's a big difference from what the management company and HomeWise are doing here. They're providing the documents in a very short amount of time because sellers need the documents very quickly. And, of course, it's the end of 22.1C, the sentence that plaintiffs rely on for their cause of action here, which states that a reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its board of managers to the unit seller for providing such information. Again, what's absent from 22.1 is any mention of an obligation by a management company or a vendor like HomeWise. What recourse would the plaintiffs have if they're overcharged for the documents? Overcharged by who, Your Honor? By the property association, by the management company. You're arguing they can't bring a cause of action under the Condo Act. If they are overcharged, do they have any recourse? Not in this situation, Your Honor. Sudler and HomeWise are for-profit companies coming in, filling a gap that is created here. There's a market for their services. Associations have 30 days to provide these documents. The truth is a lot of associations don't want to take on the obligation to provide all these documents, don't want to have to be liable if any of the information they provide is inaccurate, and certainly can't do it in the time frame that the sellers would like them to. Sellers are there to sell. They don't want to ask for the documents and then wait 30 days and hope that the prospective buyer is still around and hasn't bought somebody else's condo. And that's where Sudler and HomeWise come in. They fill a demand, a market demand, and they tell you up front how much it's going to cost and ask you exactly what documents you want. They ask you if you need it. It rushed even quicker than they normally do it. So there's a menu here where the management company is providing a service and they're telling you exactly how much it's going to cost and when you're going to get your documents. It's a capital market. There are a lot of management companies out there. Sudler can't charge whatever they want on these things. There are other management companies that the association would go out and hire to do it if Sudler charged more than the market was willing to pay. So I don't think under the circumstances here that there is a way they can sue Sudler for the price Sudler charges for these documents. The second point I'd like to get to is that dismissal was proper because there's no express private right of action relating to this reasonable fee provision and no private right of action can be implied in favor of a seller against vendors such as Sudler and HomeWise. Again, statutory construction tells us that the legislature could have put a cause of action in here for the reasonable fee provision. In fact, the sentence before the reasonable fee provision creates a private right of action in favor of condo associations and against unit owners. So in a situation similar to this one, the Illinois Supreme Court held that quote, whereas here the legislature has expressly provided a private right of action in a specific section of the statute, we believe the legislature did not intend to imply private rights of action to enforce other sections of the same statute, end quote. And that's the Metzger case. 805 Northeast 2nd at 1172. Again, if the legislature meant there to be a private right of action included in the reasonable fee provision, they could have and would have included one. As to whether there's an implied right of action, there's also not an implied right of action. We cite the court to the Dottamo decision, which goes through a four-part test to determine whether there's an implied right of action. The four factors are considered in the context looking at the purpose of the statute as a whole. The court in Royal Glen cited in our briefs stated that the purpose of the Condo Act is to govern the affairs of Illinois condominium associations. The Condo Act establishes procedures for the creation, sale, and operation of condominiums. It regulates the duties of boards of managers as well as condo associations and unit owners. They're not suing any of those entities. They are suing a management company and HomeWise, a vendor. The first question under Dottamo is, is the plaintiff within the class of persons the statute is designed to protect? The answer is no. The purpose of the act is not to protect sellers. More specifically, Section 22.1 protects buyers, not sellers, and we cite in our briefs to the Nikolaopolis case. Even if we look specifically at the reasonable fee provision itself, it protects condo associations, not the sellers. The provision doesn't say that the seller can only be charged the association's direct out-of-pocket costs. It's permissive in favor of the association. The language clearly shows that the legislature was concerned that associations be allowed to charge for their services. A reasonable fee may be charged. And the key here, and I think a key to the whole implied cause of action issue, is that even if you disagree with all of that, even if you think there's some benefit under the reasonable fee provision that goes in favor of the sellers, any benefit the sellers enjoy is at best an incidental benefit, which does not support a private right of action. And we cite the court to the Marquis-Medicos case, and also the Metzger-Illinois Supreme Court case addresses that same issue. Quickly then, the question number two under DITAMO is is implying a cause of action consistent with the underlying purpose of the statute? Again, no. The regulation of property management companies is not within the purpose of the statute. Moreover, section 22.1 is to protect buyers. And again, the reasonable fee provision protects the association, not sellers. DITAMO inquiry three, is plaintiff's injury one the statute is designed to prevent? I see my time is up. Can I just finish this thought? You can wrap up your argument. Sure. Plaintiff's claim fails this test as well. Again, the purpose of the Conduit Act is not to protect a seller from paying a third-party, for-profit vendor who's providing professional services the seller requested. And I'll end it there. Thank you. All right, thank you. Mr. Olis? Good morning. May it please the court, Phil Olis for APALE, Next Level Association Solutions, Inc., doing businesses home-wise. The complaint below states no cognizable cause of action against home-wise, and therefore the district court properly granted home-wise motion to dismiss in its entirety. Each count in the complaint is predicated on an alleged violation of section 22.1 of the Conduit Act, but section 22.1 does not apply to home-wise, which is a document vendor that was retained by the property management company to store and provide documents to members of the association on their request. Home-wise provides a valuable service that prompt accurate delivery of disclosure documents to individuals who want to sell their condos, and they do it for a posted fee. And the plaintiff, in this case, voluntarily paid that fee, knowing what it was. They received the documents that they requested, and there's no allegation that home-wise misled anyone or didn't somehow perform the services that it sold. Mr. Willis, as a practical matter, are the fees, are they fixed and static? In other words, if I, on day 29, before closing or something, say I need the following documents, do I pay the same thing if I say I need them tomorrow morning? Is there a charge for expediting? I don't believe there is. There are a few different packages that the seller can request, but I don't believe the pricing has anything to do with the time of delivery. But what the service does, one of the values that it gives to condo sellers, is almost immediate production of these documents, which is of great value. As appellant's counsel pointed out, the homeowners associations really don't have the capability to do that. The statute gives them 30 days to assemble and copy documents. What home-wise offers is a vastly superior service for people who are eager to get those documents, and they may pay a premium for that service. They know what it is up front. It's not misrepresented, and they get the value that they pay for. I'd also note that with respect to home-wise, and this is important in a number of ways, but including the unjust enrichment claim, one of the things that the appellants allege in the complaint is that home-wise keeps what they call a click fee, and we don't necessarily agree with that terminology, but the idea is that it's a very small portion of what's charged that actually goes to home-wise. So the notion that home-wise, which is aggregating, collecting, and providing these documents for download in exchange for a fee, is somehow getting some exorbitant compensation, is belied by the actual allegations in the complaint. They get a very small portion of what's charged. As I was saying a moment ago, every claim in this case depends on an alleged violation of 22.1C, and there's been a little bit of shifting sands on that point, I think, as you look through the briefing by the appellants. But I draw the Court's attention to the motion that appellants filed to stay this case in light of the Lieberman appeal, and the position they took then is that the central issue in this case is, is there an implied right of action that would be determinative? Now, we know that the Lieberman court dismissed the appeal and didn't address that issue, but there's no mystery here that the central issue is whether there is an implied right of action, and as Mr. McColgan was just demonstrating, there is none, and there certainly is none with respect to strangers to the statute like home-wise. Home-wise has no relationship that's alleged in this case with the homeowners' associations. It's not mentioned or contemplated by the statute. There's no allegations that would support the notion of aiding and abetting or civil conspiracy or any relationship whatsoever between my client and the actual association. The question was asked, why not sue the association? I think there are a couple of reasons. One is that they don't have any assets. The other is that they are protected by the business judgment rule, so the homeowners' association can go out in the market. In fact, they have statutory authority to go out in the market and retain a property management company like Sudler. There are a lot to choose from. It's a competitive market, but they go out, and they enter into a contract with a property management company. They have discretion to do that. Now, the homeowners could challenge that, but it's a pretty steep hill to climb given the way the market works. Well, maybe the association can't be sued for hiring Sudler, which in turn hired your client home-wise, but it can be sued for failing to comply with its statutory duty to provide these documents in 30 days if asked. I mean, if a seller, a unit holder seller, went to the homeowners' association and said give me the documents in 30 days and charge me only a reasonable fee because that's what 22.1 says, if there was a breach of that statutory duty, the homeowners' association could be sued. But that's like suing yourself because the homeowners' association is just the association of the unit owners, and the cost of that litigation would be spread across all the unit holders. To the extent there's a statutory duty at all, the association is the one that has that duty. Right. And a suit could lie for breach of that duty against the homeowners' association by a unit holder. I think not. And the reason is that there is no implied right of action against the association, and that provision, 22.1c, is permissive. If the association didn't turn over the documents, wouldn't that be a different question? If the association didn't turn over the – you know, that's not the question that we've addressed, whether there could be a prior right of action to require the turnover of the documents. But the regulatory obligation, the regulatory duty is to provide the disclosure documents within 30 days. And certainly a suit for enforcement of that obligation or for breach of that obligation would be within the purpose of the statute, and the unit holder would be in the zone of or in the class of persons protected by that because the unit holder has the statutory right to receive the documents in 30 days. I think the question is whether the unit holder has that right or whether it is to protect the prospective purchaser. And the short answer to your question is I don't know because what we're looking at is the reasonable fee provision, and we haven't considered whether the 30-day period might actually establish a different right. But what we're certain of is that the statutory right of the association to charge a reasonable fee is for the protection of the association precisely because they don't have any assets, these are volunteers, and the idea is you want to promote disclosure, you want to make sure buyers get the information that they need, and you want to do it in a way that does not burden the association, which doesn't really have the resources to comply in many instances. So with respect to what they're actually alleging, the violation that they're alleging, there can be no private right of action because it's not designed to protect them. And one thing that the association can do is it can charge for the service of providing these documents or it can go out and it can hire a property management company. Both of those things serve the purpose of the statute, which is to not impose these disclosure obligations on the association and all of the members of the association. And the way many of them have chosen to do that is by hiring a property management company who then in turn hires my client to provide that service. That not only discharges the association's obligations, but it also provides a valuable service, as I mentioned before, to the seller because they can get these documents, they get them from a professional service that knows what it's doing, that ensures their accuracy, and provides them on a faster basis. There was some discussion about the Ramirez case, and I do want to be clear that in that case, contrary to what Justice Walker and the Lieberman dissent appear to believe, the court held that there was no implied right of action under the Hospital Records Act and allowed the consumer fraud action to go forward precisely because the overcharging at issue there was not an excessive fee, you're charging people too much, you're gouging people, it was alleged fraud, it was double billing, it was billing for services that weren't provided, and it was allegedly calling actual costs items that were not in fact actual costs. Those were the allegations in that case, and that's why there was an ICFA claim. It was not because the court determined that there was a public policy under the Hospital Records Act that formed an unfairness claim under ICFA. You know, another difference with the Ramirez case that I think is worth noting is that this is not a situation like Ramirez where people are in the hospital and they need their medical records and there's only one way to get them, and they have no control over the relationship between the hospital and the hospital records company. These plaintiffs are members of the association. They have voting rights. They can sit on the Board of Trustees. They can complain to their board. They're not sort of captured in the sense that they need their medical records and there's no other way to get them. This is a process, or there is a process for them to challenge what their association is doing and control what their association is doing. And I see that I am out of time. Thank you. Thank you. Mr. Fish, you've got a little over two minutes. Thank you, Your Honor. Counsel made it clear for HomeWise that homeowners associations do not have the capability of providing these documents. That's what he said, and that's what we're alleging. We allege in paragraph 9, 2453, we are forced to use the defendants. There is no other way to get these documents. You heard it from counsel. That's number one. Number two. Is there no other way to get the documents or no other way to get the documents quickly, like your clients want? Okay. You know, sure, there could be a lawsuit against them, that kind of a thing, but that's not the standard. You know, is this court- Well, the standard in the statute is 30 days. I haven't heard anybody say you can't get the documents from the association within 30 days. It sounds like they're saying you can't get them quickly, which if you're trying to close on a condo sale, you want them quickly. You can't get them, period. As the amicus said, they are in the custody. Look at the first paragraph of their brief. They are in the custody of the property management companies. We are not suing an association that didn't use a property management, as they pointed out. They turn everything over. There is no association from which to get the documents. They don't have the information. They don't know what the assets and liabilities are. That's all. They don't know what the outstanding balance is. The property management company has it. They are the only way to get it. In the Friedman v. Lieberman case, one of the questions during the oral argument was, so what would stop the management company from charging thousands of dollars for these documents? Well, again, if you're trying to sell your condo and you've got to meet a 30 or 40-day closing deadline or whatever it is, exactly. You're not going to stick around and sue them. You're going to pay it and move on. Consumer fraud, every case, they suggest they're better off because of this statute, because there's a statute that doesn't specifically say a property management company can't do that. They say, it doesn't mention us. We can do whatever we want. We're in a better position. That is not what the case law is really clear. That, in fact, a consumer fraud claim is easier to bring when you need it because a statute doesn't cover it. And it's not like it's got to be the only choice. Your Honors, the Seventh Circuit has said it has to leave a consumer with a little choice but to submit to the request. That was this court's ruling in the Newman v. Metrolife case from last year. Clearly, consumers have little choice but to submit to this request. Maybe there is another choice if they could file a lawsuit and default on their closing, but that's not the standard. Going back to your Honor had asked me about whether there was under Section G, whether that forecloses a cause of action. And that was briefed below, your Honor, and that related to an amendatory act that doesn't relate at all to 22.1. So we briefed that in the underlying claim, and that does not relate to this specific section. So I think if this court were to rule that you can charge whatever, that there is no restriction, then you're going to involve a situation, again, in the context of a fiduciary relationship, where property management companies say we're in control of providing the documents, we'll charge whatever we want, and it leaves people that are selling their condos with, you know, they've got to meet their closing deadlines. That's why the Consumer Fraud Act exists. That's precisely why, and every case that has addressed it has said you don't intertwine the implied right of action. Our claim, Judge Steineve, is based on unfairness. Yes, there is some overlap with what they say the amount is. Unfairness does not mean they violated the statute. That may provide a sort of a key for how much they can charge, what is reasonable. Unfairness and oppressive under the Consumer Fraud Act is independent, completely and utterly independent of a cause implied right of action, and every case says so. Every single case has said they don't get to be better off because they're not covered by a statute. So as the oral argument made clear, there is no other way. The associations don't have the documents. It's the only game in town. All right, thank you. Thanks to both counsel, all counsel, I should say. The case is taken under advisement.